FRICK CO. v. GEISER MFG. CO. et al.

(Circuit Court of Appeals, Third Circuit. February 8, 1900.)

No. 30.

PATENTS—ASSIGNMENT OF RIGHTS IN FUTURE INVENTIONS—CONSTRUCTION OF CONTRACT.

An employé who was the patentee of threshing machinery embodied in a threshing machine called the "New Peerless," manufactured by his employer under a license from him, granted to the employer an exclusive license to use such patents, and the exclusive right to use "all inventions and improvements in said machinery" thereafter made; also all "new designs of such machinery" made by him while in the employ of the licensee, and all inventions and improvements which should thereafter be made thereon. Held, that such license did not grant the right to use a patent issued to the licensor after he left the licensee's employ, for threshing machinery which was not an improvement on that of the New Peerless machines, nor an infringement of the patents under which such machines were made, but which embodied a different principle of operation, and devices which could not be used in the New Peerless machines, except by substitution; such patent being for a "new design," within the meaning of the contract.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion in circuit court, see 92 Fed. 189.

Francis Rawle and Frederick P. Fish, for appellant.

Wm. C. Strawbridge and Joseph C. Fraley, for appellees.

Before ACHESON and GRAY, Circuit Judges, and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge. The complainant in this case claims an exclusive license to use the devices included in patents

Nos. 541,101 and 562,625, under an agreement made between Frank F. Landis, the patentee, and the Geiser Manufacturing Company, which bears date April 5, 1893. The specific clause of the agreement on which the claim is founded reads as follows:

"The party of the first part [Landis], for the consideration hereinafter named, doth hereby give and grant unto the said party of the second part [complainant], its successors and assigns, the exclusive right, within the United States of America, to use, in the manufacture of the hereinafter mentioned machinery, and parts of same, in its factory at Waynesboro, aforesaid, and in such branch factory or factories as it shall establish within said United States, all the patents, inventions, and improvements of him, the party of the first part, now existing and used by the party of the second part in the manufacture and sale of the hereinafter mentioned machinery; also the exclusive right to use, as aforesaid, all inventions and improvements in said machinery hereafter made by the party of the first part; also all new designs of such machinery hereafter made by the party of the first part while in the employ of the party of the second part; also all inventions and improvements hereafter made by the party of the first part in the machinery covered by such new designs,—all of which, however, is subject to the following limitations, to wit: First. In case of the Peerless portable engines, Domestic engines, Peerless traction engines, New Peerless threshing machines, and Peerless steam-plowing outfits, the rights above granted shall continue exclusive only so long as the party of the second part shall confine its manufacture (in the lines represented by said engines, threshing machines, and steam-plowing outfits) exclusively to those now being manufactured by it or others embodying one or more patents of the party of the first part. * * * The manufacture and sale of the small Geiser thresher and horse powers (not above included) shall not in any way interfere with the introduction and manufacture of other machines of same class, of new designs, that may prove profitable and desirable to the party of the second part, upon which the party of the first part may have or may obtain patents."

The patents in suit were granted to the party of the first part to said agreement after he left the employ of the said party of the second part, and, inasmuch as they relate only to the class of machinery used in threshing machines, we may say that, for the purposes of this suit, the contract deals with two classes of subjects, viz. inventions and improvements in the New Peerless threshing machine, and "new designs" in threshing machines generally. It is evident, from a careful reading of the contract, that the parties had in mind two kinds of inventions. For each they used a distinct descriptive phrase, and for each they made different disposition. To the one, the Geiser Company was to be entitled in any event; to the other, they acquired rights only if made while the party of the first part was in their employ.

The reason for this is also obvious. At the time the contract was made, the Geiser Company were the exclusive licensees of certain machines and machinery, and among them the New Peerless threshing machine, paying royalty to Landis thereon. Therefore any invention or improvement in said machinery, which would make it more effective or desirable to the trade, should, whenever made, attach to said machine, and, by making it more salable, inure to the benefit of the patentee and licensee alike. By the phrase, "all invention and improvement in said machinery," it was intended to designate some change or invention to be embodied in it, which, without altering the operating principle upon which it is constructed, enables it the better to do the work for which it was adapted. By

a "new design" it was intended to describe a new invention relating to threshing machines generally, which, while adapted to do the same work, would operate, in whole or in part, upon a new or different principle. In machines constructed upon a "new design," the Geiser Company could, at the time of making the contract, have had no rights, for the machines did not exist, nor were they to acquire any rights in them, when such "new designs" were perfected, unless the patents therefor were obtained by the party of the first part while in their employ. Any invention which would be a step in advance in the art of threshing, developed on the lines of the principle of the New Peerless machine at that time, would be an improvement on it if it added to the efficiency of said machine; while an invention for obtaining the same or different results, embodying new or different principles of operation from those of the New Peerless, would fall within the category of new designs. If this be so, it remains to determine the characteristics of the New Peerless threshing machine, and the principles upon which it is constructed, and compare them with the machine which embodies the claims of the patent in suit.

The grate or separating mechanism in the New Peerless threshing machine is placed at a distance of some 18 inches from the concave where the threshing is done, and against it the straw is thrown in such a way as to permit the grain, which is heavier, to pass through the grate to the grain bottom, while the straw is lifted by rotary or rotating fingers, and passes to the straw rack above. These revolving fingers form one of the characteristic features of the separating mechanism shown in the New Peerless machine. Without it the straw would stop in the grate upon which it is thrown from the concave, and the machine would clog. In the patent in suit, the grate or separator is moved nearer the concave, the grain and straw are not thrown against it, and revolving fingers are not used to carry the straw over the separator. The straw passes over the separator under the momentum acquired by the revolving cylinders, so as to permit the cylinder teeth to rub the straw against the grate, for the purpose of separating the grain and carrying the straw to the rack.

The New Peerless threshing machine, and the machine of the patent No. 541,101, are, as to the separating devices, in two distinct lines of development, which are represented, the one by defendant's Exhibit A, and the other by defendant's Exhibit H. Improvements along these different lines constitute and result in new designs. A machine embodying the claim of patent No. 541,101 would not infringe the claims of patent No. 401,840, which are incorporated in the design of the New Peerless threshing machine, and therefore the former is not an improvement on the latter. Manufacturing Co. v. Stebbins (C. C.) 4 Fed. 445. The radical differences in mode of operation, which result from differences in location and formation of the grates, and the operative relation between cylinders and grates, render the machines of a separate type. For the same reason the machine embodying the claims of the second patent in suit, No. 562,625, is not an improvement on the New Peerless

machine. So far as its construction is in accordance with said claims, it differs radically in principle therefrom. It is a development of the prior art in a different direction, so that the devices of the patent in suit cannot be incorporated in the New Peerless machine, except by eliminating the characteristic features of the New Peerless, and substituting said devices in their stead.

An examination of the grain-cleaning mechanism of the New Peerless machine will show it to be only a modification in form of the machine of the prior art, known as the grain plate and roller type, and which consists of two grain boards adapted to be joggled, having rollers at the rear edge thereof, and placed the one above and in advance of the other. Below these there is a support and dividing board, which separates the grain from the waste. The edges of the grain boards are provided with teeth like a comb, and the rollers are grooved so that "the edge of each tooth approaches close to the projections of the grooved roller, thus forming meshes through which the grain can fall.". The grain, as it falls upon the second grain plate, and during all subsequent operations, is subjected to a strong blast of air, caused by a fan, which separates the grain from the chaff.

Constructed upon these old general principles, the claims of the patent which are embodied in the New Peerless machine relate "to an adjustable retaining plate pivoted to the front of the grain plate"; to the construction of a hinged shoe, by means of which both grain boards may be adjusted simultaneously; to the mechanism for diminishing, or wholly stopping, the joggling motion of the grain plates; to the mechanism for shaking, and the sliding slatted frame for covering, the tailing spout; and to the form of construction of the surface of the grain plate adjacent to the roller, "the combination with a grain plate, provided with flutes, of a roll provided with grooves," the purpose of which is to work the material sidewise in the machine, and rub it against the edge of the grain plate. These are characteristics of the New Peerless machine, and distinguish it from others of the same type. None of these characteristics are embodied in the machine of the patent in suit. It is not adapted to be operated with fluted grain plates or spiral grooved rollers, but is obviously intended to be an improvement upon that type of machine in which the grain-plate cleaner has a smooth upper face, with serrated edges, and the roll has grooves at right angles to the axis of the roll. The grain-cleaning mechanism of the New Peerless machine cannot be converted into the grain-cleaning mechanism of the patent in suit, nor can the grain-cleaning mechanism of the patent in suit be used in the New Peerless machine, except by substitution. In no way could the claims of the patent in suit be construed to be infringements upon the New Peerless machine. We are therefore of the opinion that, as to the grain-cleaning mechanism also, the machine of the defendants is a "new design," and not an improvement on the New Peerless. On the whole case, we are of opinion that the decree of the circuit court should be reversed, and the record remitted, with instructions for the entry of a decree dismissing the complainant's bill.